PICOTTE, ET AL. vs. COOLEY, ET AL.

Under the Spanish law property, real and personal, acquired or purchased during marriage, enters into the community, and at the death of the husband, one half goes to the wife. Lindell vs. McNair, 4 Mo. R. 380, affirmed.

ERROR to Pike Circuit Court.

BIRD *for Plaintiffs.*

GAMBLE & BATES *for Defendants.*

SCOTT, J., *delivered the opinion of the Court.*

This was an action of ejectment, commenced against the defendants in error by the plaintiffs in error, for a tract of land situate in the county of Pike. On the trial of the cause, the jury found the following special verdict: "As to the trespass and ejectment in said declaration mentioned on and in the parcel of the tract of land, in said declaration mentioned, and situate in the county of Pike, bounded as follows, to-wit: commencing at the north-western corner of United States' survey number one thou-

sand, seven hundred and thirty-seven, in the south-east quarter of section thirty-five, township fifty-two north, range one east; thence north sixty degrees east, with the north-western boundary line of said survey two hundred and forty-five chains, to the most northern corner thereof, in the north-west quarter of section twenty-nine, township fifty-two north, range two east; thence south thirty degrees east, with the north-eastern boundary line of the said survey number one thousand seven hundred and thirty-seven, one hundred and eighty chains to the intersection with the line between township fifty-one and fifty-two north, range two east; thence west with the said township line, and the line between township fifty-one and fifty-two north, range one east, to the intersection with the south-western line of survey one thousand seven hundred and thirty-seven; thence north thirty degrees west, with the said south-western boundary line, thirty-six chains and seventy-four links to the most western corner and place of beginning, containing one thousand and six hundred and fifty-five acres and six hundredths of an acre, being parcel of a tract of land granted by Zenon Trudeau, lieutenant governor of Upper Louisiana, under the Spanish government, to Joseph Brazeau, and, subsequently confirmed under the authority of the United States to said Brazeau, and bounded northwardly by land now or lately claimed by the heirs of Auguste Chouteau; southwardly by lands now or lately claimed by Peter Chouteau, and by land now or lately claimed by Auguste A. Chouteau, and eastwardly by land of the United States, or of persons claiming under the same, and is the same tract described in the deed executed by Antoine Soulard and Julia, his wife, Maria Therese Brazeau, widow of Joseph Brazeau, and Baptiste Duchouquette, to Mary E. Carter, Walter Coles, and Edward Coles, dated twenty-fifth day of of November, in the year 1818; that the same is situate in the counties of Pike and Lincoln, and State of Missouri, and was conceded to the said Jos. Brazeau, by the proper authorities of the Spanish government, on the 18th day of December, in the year 1797; that the said Joseph Brazeau became thereby seized and possessed thereof, and being so seized and possessed, he, on the 5th day of May, in the year 1798, made his last will, purporting to devise the said tract of land, in full enjoyment and during her natural life only, to Maria Therese Delisle, his dear spouse, and from and after her death, to his niece Marie Brazeau, absolutely and forever; that on the 22d day of November, in the year 1816, at St. Louis, in the territory of Missouri, the said Joseph Brazeau, being so seized and possessed of said tract of land, departed this life; that on the 26th of November, in the year 1816, at St. Louis, in the territory of Missouri, the last will

aforesaid, of the said Joseph Brazeau, was duly proved; that the said concession was confirmed by the United States, on the 12th day of April, the year 1814, to the said Joseph Brazeau; that the said Joseph Brazeau, and Marie Therese Delisle aforesaid, his wife, were married at Kaskaskia, in Illinois, on the .7th day of November, in the year 1769; that the said Marie Brazeau, niece and devisee aforesaid of the said Joseph Brazeau, intermarried on · the 3rd day of July, in the year 1798, at St. Louis, in the province of Upper Louisiana, with Jean B. Duchouquette; that the said Marie Brazeau, wife of the said Jean B. Duchouquette departed this life at Louis, in the territory of Missouri, on the 8th day of July, in the year 1818; and the said Jean B. Duchouquette departed this life on the 23d day of March, in the year 1833, at St. Louis, in the State of Missouri. And Marie Therese Delisle, widow of Joseph Brazeau, departed this life at St. Louis aforesaid, on the third day of February, in the year 1834; that a marriage contract was executed between the said Marie Brazeau and Jean B. Duchouquette, previous to their intermarriage, to-wit: on the 2d day of July, in the year 1798, at St. Louis aforesaid, by which it was provided that the said Jean B. Duchouquette, and Marie Brazeau, have promised to take one another in the name and law of marriage, and to have the same made and solemnized in the Catholic, Apostolic and Roman church, our holy mother, as soon hereafter as may be, or as soon as one or other of the parties shall require it of the other; the said future husband and wife to be united and common in all estate, (*biens*,) moveable and immoveable purchases, (*conquets*,) and acquisitions, (*acquets*,) according to their desire, without power to change any thing from this disposition, even if they should make purchases, or transfer their residence in a country where the laws, usages and customs are contrary, which they expressly derogate and renounce; the said future husband and wife take each other with all their rights and estate, (*biens*,) such as have come and follow to them, or may fall to them from the succession of their father and mother, to whatever sum they may amount, of whatever nature they may be, and in whatever place situate, even from this present time, with those they may have of their own, either by donation or otherwise; it shall and may be lawful to the said future wife, and to the children which may issue from the said marriage, in renouncing the present community, to retake freely, clearly, and frankly all and whatever she may have brought, or may have happened and befallen to her during the said marriage, either by inheritance, gift, bequest, or otherwise. And the jurors aforesaid, upon their oaths aforesaid, do further find that Therese Picotte, one of the plaintiffs, is a daughter of the said Jean B. Duchouquette and

Marie Brazeau, his wife; that said Therese was born at St. Louis aforesaid, on the 9th day of February, in the year 1813, and intermarried at the same place on the 15th day of August, in the year 1831, with Honore Picotte, one of the plaintiffs; that John B. Lesperance, another of the plaintiffs, is the surviving husband of Elizabeth Lesperance, deceased, which said Elizabeth was a daughter of the said Jean B. Duchouquette and Marie Brazeau, his wife, and was born at same place on 9th day of September, in the year 1815, and intermarried at same place on the 7th day of July, in the year 1834, with said Jno. B. Lesperance, and died at same place on the 29th day of July, in the year 1838, leaving in full life her said husband, John B. Lesperance; that John B. Duchouquette and Joseph Duchouquette, two of the plaintiffs, are sons of the said Jean B. Duchouquette and Marie Brazeau, his wife; that the former was born at same place on the 1st day of December, in the year 1810, and the latter was born at same place on the 10th day of October, in the year 1808; that Theodore Papin, another of the plaintiffs, is the surviving husband of Celeste Papin, which said Celeste was a daughter of the said Jean B. Duchouquette and Marie Brazeau, his wife; was born on the 25th day of November, in the year 1802, at St. Louis aforesaid; was intermarried with said Theodore Papin, at the same place on the 25th day of October, in the year 1820, and died at same place on the 23d day of November, in the year 1833, leaving in full life her said husband Theodore Papin; that there was issue of the said marriages, between the said Jno. B. Lesperance and Elizabeth Duchouquette, and the said Theodore Papin and Celeste Duchouquette; and that the said defendants, at and before the time of the commencement of this suit, were in the possession of the said parcel of the said tract of land, and have taken to themselves the rents, issues, and profits thereof, and deny to the said plaintiffs any interest in the said land, or any share of the profits of same, claiming to themselves to be whole and sole owners thereof; and the jurors aforesaid, upon their oaths aforesaid, do further find that a marriage contract was executed between the said Joseph Brazeau and Marie Therese Delisle, previously to their intermarriage, to-wit: on the 6th day of November, in the year 1769, at Kaskaskia aforesaid, by which it was provided that the said Joseph Brazeau and Marie Therese Delisle have promised to take one another in the name and law of marriage, and to have the same made and solemnized in the Catholic, Apostolic and Roman church, as soon as possible; to be united and form one sole community in all the goods and chattels, moveable and immoveable, acquirements and purchases, conformable to their wishes, without having the power in any manner whatever

to change or alter any thing to this disposition or settlement, although they should acquire other property, or remove into a country where the laws, usages and customs should be contrary, to which they do hereby expressly derogate and renounce; the said future spouses receive each other with all their rights and property whatever, such as they may have acquired, or shall hereafter accrue to them by inheritance from their father and mother, to whatever sum they may amount, of whatever nature they may be, and in whatever place they may be situate, even those they possess at this present time in their proper name, as also those which they may have in their own right, whether by gift or otherwise; the said future spouses do mutually give to the survivor of them, during life, all and singular, the property moveable or immoveable, purchases, or acquisitions, which may have been acquired by the said future husband and wife during the coverture, and even such as they hold in their own right, to whatever sums they may amount, of whatsoever value, or wheresoever situate, to be held and enjoyed by the survivor during his or her life, only in case, however, there should be no child or children living, or to be born of the said marriage, in which case of children, this present gift shall remain null in law.

And the jurors aforesaid, upon their oaths aforesaid, do further find that there was no child born of the said marriage between the said Joseph Brazeau and Marie Therese Delisle.

And the jurors aforesaid, upon their oaths aforesaid, do further find that on the 14th day of February, in the year 1817, the said Jean Duchouquette and the said Marie Brazeau, his wife, executed a writing, under their hands and seals, purporting to convey to Marie Therese Delisle, widow of Joseph Brazeau, in fee all their interest in the quantity of 1008 arpens, or the seventh part of said tract of land; that said instrument in writing was, on the same day acknowleged by the makers thereof, before the clerk of the Circuit Court, of the county of St. Louis, in the territory of Missouri; and that the wife of the said Jean B. Duchouquette was, previously to her acknowledgement, examined separate and apart from her husband, and by the officer taking her acknowlegement made acquainted with the contents of said writing, and upon such examination and information, declared that she executed the same freely, voluntarily, and of her own free will and accord, without fear, (constraint,) restraint, coercion, or undue influence of her said husband. And that the said writing, thus acknowleged, was on the 13th day of March, in the year last aforesaid, filed for record with the recorder of the county of St. Charles, in the territory of Missouri, and recorded; in

which county the said tract of land was then situate; that on the 14th day of February, in the same year, the said Maria Therese Delisle, widow of Joseph Brazeau, deceased, executed a writing under her hand and seal, purporting to convey to Jean B. Duchouquette, in fee, all her interest in the quantity of 1008 arpens, or the seventh part of said tract of land; that said instrument of writing was, on the same day, duly acknowleged by the maker thereof, and on the 13th day of March, in the same year, duly recorded; that on the 20th day of March, in the year 1824, one Daniel Draper, styling himself collector of taxes for the county of Lincoln, in the State of Missouri, executed under his hand and seal, a writing purporting to convey to Henry G. Soulard, in fee, the said tract of land granted as aforesaid, to the said Joseph Brazeau, which deed was duly acknowleged and recorded; that on the same 14th day of February, the said Marie Therese Delisle, widow of said Joseph Brazeau, the said Jean B. Duchoquette, and the said Marie Brazeau, his wife, and niece of said Joseph Brazeau, executed a writing under their hands and seals, purporting to convey to Antoine Soulard, in fee, all their interest in the quantity of 5,040 arpens, or the five-sevenths of the said tract of land; that said instrument of writing was, on the same day, acknowleged by the makers thereof before the clerk of the Circuit Court of the county of St. Louis, in the territory of Missouri; and that the wife of the said Jean B. Duchouquette was, previously to her acknowlegement, examined separately and apart from her said husband, and by the officer taking her acknowlegement made acquainted with the contents of the said writing, and upon such examination and information, declared that she executed the same freely, voluntarily, and of her own free will and accord, without fear, restraint, constraint, coercion, or undue influence of her said husband, and that said writing, thus acknowleged, was, on the 13th day of March, in the same year, filed for record with the recorder of the county of St. Charles aforesaid, in which county the said tract of land was then situate, and on the next day recorded; that on the 25th day of November, in the year 1818, Antoine Soulard and Julie, his wife, Marie Therese Delisle aforesaid, widow of said Joseph Brazeau, and the said Jean B. Duchouquette, executed a deed to Mary E. Carter, Walter Coles, and Edward Coles, aforesaid, purporting to convey to them the said tract of land in the declaration mentioned, and that said deed was duly acknowleged and recorded; but whether on the whole matter, by the jurors aforesaid, in form aforesaid, found as regards the said parcel of said tract of land, in said declaration mentioned, which is situate in the county of Pike, the defendants are guilty or not, the jurors aforesaid are entirely

ignorant, and thereon pray the advice and consideration of this Court, and if, upon the whole matter aforesaid found, it shall appear to the Court that the said defendants are guilty of the trespass and ejectment, in manner and form as in said declaration alleged, on and in said parcel of land, then the said jurors say, on their oaths aforesaid, that said defendants are guilty in manner and form as in said declaration alleged, on and in said parcel of land, and they assess the damage of the said plaintiffs, by reason thereof, to one cent; but if, upon the whole matter aforesaid, by the jurors aforesaid, in form aforesaid found, it shall appear to the Court aforesaid, that the defendants are not guilty of the said trespass and ejectment, as to the said parcel of the said tract of land, in said declaration mentioned, in manner and form as in said declaration alleged, the same jurors say, on their oaths aforesaid, that the defendants are not guilty of the trespass and ejectment, in said declaration alleged, on and in said parcel of said tract of land, in said declaration mentioned."

On this verdict the Court rendered judgment for the defendants, and the plaintiffs have brought the case to this Court by writ of error.

The contract of marriage between Joseph Brazeau and Marie Therese Delisle, was executed at Kaskaskia, in Illinois. At that time the French law prevailed at that place. Nothing more appearing than what is stated in the special verdict on the subject, we are warranted in saying they were domiciliated in Illinois. They afterwards came to Louisiana, where the Spanish law prevailed. The difference between the French and Spanish law of community is not very great. By the Spanish law, the husband and wife, by the mere act of intermarriage, became partners in all the estate, real and personal, which they respectively possess, except what the civil law calls the income and profits of public offices, civil or military, held by the husband, which belong exclusively to him. All that is acquired or purchased during coverture, whether real or personal, goes into partnership, as being presumed to be the fruits of the joint industry and economy of husband and wife. Not so with property acquired by devise, bequest, gift, succession or inheritance, this remains the separate property of the party to whom it accrues, because not the fruits of the joint industry. This is what the French law calls *"les propris,"* which means separate property. *Acquets* and *conquets* mean the property jointly acquired. In all these respects the custom of Paris is the same with the Spanish law, except that the personal property, only possessed by the parties at the time of the marriage, enters into the partnership, as also *acquets* and *conquets* acquired during coverture, whether real or personal. But real property, held by either party at the time of

the marriage, continues to be held separately, unless the contrary is stipulated. The result of this community or partnership, both at the Spanish and French law, is this: that on the dissolution of the partnership, the surviving party and the representative of the deceased, each take back what was brought on his or her side into the partnership, value or kind, in value of personal estate, in kind of real estate, and what remains, being considered as gains or profits, is equally divided as between partners.

This I understand to be the law relative to that community which exists between man and wife, by operation of law, uninfluenced by any contract. If the law itself would not place a gift from the king to either party in the community, does it follow that the law went farther and prohibited a donee from disposing of a gift in any manner he thought proper. The law of itself would not make a disposition of it, but because this was declined, it does not follow that he, to whom the gift was made, could not dispose of it, especially as that disposition was not to take effect until after his death. Such a restriction would very much impair the value of the gift. This is said upon the supposition that the concession to Jos. Brazeau was a royal gift. I do not know what should warrant us in saying so. In the absence of all knowledge as to the means by which the concession was obtained, are we to presume it was purely voluntary? Suppose it was for services rendered, or on conditions to be performed, are we to presume that they were performed at the expense of the husband alone, or may they not have been at the joint expense of the husband and wife?

If, then, the land conceded to Joseph Brazeau entered into the community established by contract between him and his wife, at the time of the marriage, then the land in controversy, at his death, belonged one half to his wife, and the other half went to his niece, Marie Brazeau, under the will, subject to a life estate of the wife. But this matter of the life estate of Mrs. Brazeau in Marie's, the niece's half, may be thrown out of the consideration, a- it only serves to embarrass, and does not otherwise affect the question.

Then Madam Brazeau, and Douchouquette and wife, conveyed five-sevenths of the land to Soulard. As Madam Brazeau owned one-half of the land, and Douchouquette and wife the other half, we must suppose that Madam Brazeau conveyed one-half, and Duchouquette and wife one-half, of what was granted. This would leave one-seventh remaining in Mrs. Brazeau, and one-seventh in Douchouquette and wife. Then Douchouquette and wife convey one-seventh to Madam Brazeau. Thus

all title and interest is out of Mrs. Douchouquette, under whom the plaintiffs claim. Madam Brazeau conveyed one-seventh to Mrs. Douchouquette.

The counsel for the plaintiffs contended that the land devised by Brazeau to Mrs. Douchouquette, did not enter into the community.   If it did not enter into the community, then clearly it was *paraphernal*, and if *paraphernal* it might be conveyed by the husband and wife.   Lindell vs. McNair, 4 Mo. R. 380.   But, if by the marriage contract, the land entered into the community, then the husband and wife, by joining, passed the title to Madam Brazeau and Soulard.   By supposing that the order of the conveyances between Madam Douchouquette and her husband, and Madam Brazeau, different from that before stated, that is, that Madam Brazeau first conveyed one-seventh to Douchequette and wife, and they afterwards conveyed one-seventh to her, it will appear that one-seventh remained in Douchouquette and wife, to the half of which Madam Douchouquette would be entitled, and consequently the plaintiffs entitled to recover one-fourteenth.   But the order of time, in which the conveyances were made, is not stated, and as, in this Court, the presumption is that the judgment is for the right party, and he who would gainsay it, must show the error of the judgment below, we will not be warranted in disturbing it unless something is shown which would sustain our action.

It will have been seen that this case depends on the question settled in the case of Lindell vs. McNair, before cited.   Whatever may be thought of that opinion, if the question was now for the first time to be settled, we consider it has been too long determined, and too many rights may now rest upon it, to make it expedient to disturb it.

Judge NAPTON concurring, the judgment will be affirmed.